IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MARK WALLACE FITZGERALD,
    Plaintiff,

vs.                                  Case No.:  5:13cv261/RS/EMT

CORRECTIONS CORPORATION OF AMERICA, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Plaintiff's Third Amended Complaint filed pursuant to 42 U.S.C. § 1983 (doc. 17).  Leave to proceed in forma pauperis has been granted (doc. 4).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that Plaintiff's claims against some of the Defendants should be dismissed.

I.    BACKGROUND

Plaintiff was an inmate of Graceville Correctional Facility ("Graceville C.F.") at the time he commenced this action (doc. 17).  His allegations concern events that occurred from May of 2012 to July of 2013, when Graceville C.F. was operated by Corrections Corporation of America ("CCA") under contract with the Florida Department of Corrections (*see* doc. 1 at 7).[1]  In the Third Amended Complaint, which is the operative pleading, Plaintiff names ten (10) Defendants, including CCA and the following nine (9) individuals who worked at Graceville C.F. at the time of the events giving rise to this action:  Warden Jason Ellis; Assistant Warden Willie Ruffin; Assistant Warden Sean Gillis;

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

Chief of Security Matt Sanders; Lieutenant David Russell; Kerry Doyle, Head of Health Services; Mr. Durrance, Unit Manager of B Quad; Sergeant Grinder; and "Unidentified Nurse" (doc. 17 at 1–3).

Plaintiff alleges that upon his arrival at Graceville C.F. in the first week of May 2012, a nurse asked him during orientation why his previous institution had issued a medical pass for a low bunk (doc. 17 at 6). He states he told the nurse about his "condition" (*id.*). Plaintiff alleges the nurse advised him he would see a doctor within a week (*id.*). He alleges he was forced to report to the kitchen for work, which required him to stand and lift heavy containers during his seven-hour shift, causing damage to his back (*id.*). He alleges during that time he submitted several sick call requests (*id.*). Plaintiff alleges he was seen by a nurse on May 11, 2012 (*id.*). The nurse provided a pain reliever and advised him that he would be seen by a doctor (*id.*). The nurse also advised him he must sign a release to enable the institution to receive medical records from doctors who treated him prior to his incarceration (*id.*). Plaintiff states he signed the release (*id.*).

Plaintiff alleges he was forced to continue working in the kitchen, which caused more damage to his back (doc. 17 at 6). He alleges that on May 21, 2012, he reported to work but claimed he was suffering a medical emergency due to his inability to stand or sit because of his back injuries (*id.*). He alleges he was seen by Defendant "Unidentified Nurse," who told him that a doctor had prescribed ibuprofen and medical passes, but she did not provide him with either, and instructed him to obtain ibuprofen from the dormitory officers (*id.*). Plaintiff alleges Unidentified Nurse was holding his medical file, which Plaintiff later learned contained a medical pass for no standing more than thirty (30) minutes, issued three days prior on May 18 (*id.* at 7). Plaintiff alleges he returned to the kitchen and was told to work or go to confinement (*id.*). He alleges the kitchen staff contacted the medical department, and Defendant "Unidentified Nurse" told them nothing was wrong with Plaintiff (*id.*). Plaintiff alleges he chose confinement instead of work, so Defendant Lieutenant Russell directed him to place his hands behind his back to be escorted to confinement (*id.*). Plaintiff told Russell he was physically and medically unable to do so, and he offered his hands in front of him (*id.*). Plaintiff alleges Defendant Russell emptied a can of chemical spray into Plaintiff's eyes from a distance of six (6) inches and handcuffed and dragged him to confinement (*id.*). He alleges the Inspector General's Office found Defendant Russell guilty of excessive force (*id.*).

Case No.: 5:13cv261/RS/EMT

Plaintiff alleges he received a disciplinary report for refusing to work (doc. 17 at 7). He alleges his medical passes were delivered to him in confinement on June 10, 2012 (*id.*). Plaintiff alleges Defendants Assistant Warden Ruffin and Chief of Security Sanders presided over the disciplinary hearing on June 15, 2012, and returned him to confinement for another week (*id.*). Plaintiff alleges he received a letter from Defendant Doyle, Head of Health Services, stating that the Graceville C.F. medical department had no prior knowledge of his spinal injuries (*id.*). Plaintiff alleges his family contacted a corporate representative from CCA, and the representative instructed Defendant Warden Ellis to "fix the situation" (*id.*). He alleges Warden Ellis contacted his family and told them he would rectify the situation, but he did not (*id.*). Plaintiff alleges Defendant Gillis told his family Plaintiff would be sued if he pursued a lawsuit regarding this matter (*id.*). Plaintiff alleges he was finally seen by a doctor on August 3, 2012, and issued a medical pass for no standing or sitting more than twenty minutes (*id.*).

Plaintiff alleges that seven months later, in March of 2013, Defendant Sergeant Grinder confiscated his medical passes (doc. 17 at 8). He alleges Grinder stated she was acting at the direction of Defendant Assistant Warden Gillis, but Gillis denied this (*id.*). Plaintiff alleges Defendants Gillis and Sanders told him he would have to go through the medical department to have the passes reissued (*id.*). He alleges he filed a formal grievance with Defendant Durrance, the Unit Manager of his housing unit, but Durrance told him he could not do anything, and urged him to withdraw his grievance (*id.*). Plaintiff alleges his medical passes were never returned, and he was released from Graceville C.F. in July of 2013 (*id.*).

Plaintiff alleges from May of 2012 to July of 2013, he "suffered constantly" due to the security officers' failure to comply with his medical passes (doc. 17 at 8). For example, he alleges he was forced to attend school and sit for two hours (*id.*). He also alleges officers locked him out of his cell for up to an hour at a time (*id.*). He alleges he filed informal grievances with Defendant Gillis regarding the officers' failure to comply with his medical passes, but Gillis delayed two months in responding to the grievances and then "failed to rectify the situation" (*id.*). He additionally alleges Defendant Sanders was "aware of the situation" but "failed to ensure that his subordinates followed proper procedure" (*id.*).

Plaintiff claims the Defendant "Unidentified Nurse" violated his Eighth and Fourteenth Amendment rights (doc. 17 at 9.). He claims Defendant Russell violated his Eighth and Fourteenth Amendment rights by using excessive force (*id.*). Plaintiff claims Defendant Doyle was deliberately indifferent to his medical condition (*id.*). He claims Defendants Ellis, Ruffin, Gillis, and Sanders violated his Eighth and Fourteenth Amendment rights by "failing to rectify the situation" and "allowing the cruel and unusual punishment to continue" (*id.*). Plaintiff claims Defendant Grinder violated his Eighth Amendment rights by confiscating his medical passes and locking him out of his cell (*id.* at 10). He claims Defendant Durrance violated his Eighth and Fourteenth Amendment rights by failing to follow the administrative grievance procedure and "allowing his subordinates' sadistic treatment" (*id.* at 9). As relief, Plaintiff seeks monetary damages in the amount of $250,000.00 from each Defendant for pain, suffering, and further damage to his spine, as well as punitive damages (*see id.*).

II.   APPLICABLE LEGAL STANDARDS

   A.   Screening under 28 U.S.C. § 1915(e)(2)(B)

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

### B. Deliberate Indifference to Serious Medical Needs

Prison officials violate the Constitution when they act with deliberate indifference to an inmate's serious medical needs, giving rise to a cause of action under § 1983. *See* Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). To prevail on a claim of deliberate indifference, a plaintiff must show (1) a serious medical need; (2) deliberate indifference to that need on the part of the defendant; and (3) causation between the defendant's indifference and the plaintiff's injury. *See* Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (quotation omitted). Alternatively, a plaintiff can establish a serious medical need by showing that a delay in treatment worsened his or her condition. *Id.*

To establish deliberate indifference, a plaintiff must show "(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goodman v. Kimbrough, 718 F.3d 1325, 1331–32 (11th Cir. 2013) (internal quotation marks omitted). Indeed, to show deliberate indifference, the defendant's response to the medical must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Conduct that is more than mere negligence includes: (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all. *See* McElliott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). A simple difference in medical opinion between the medical staff and an inmate as to the latter's diagnosis or course of treatment does not establish deliberate indifference. *See* Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (the question of whether a plaintiff should have received different diagnostic tests or treatments is not an appropriate basis for grounding liability on a deliberate-indifference claim); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

  C.  Excessive Force

Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment. The standard applied to Eighth Amendment claims has a subjective and an objective component. As to the objective component, "not every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S. Ct. 1175, 1178 (2010) (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 10 (citation omitted). Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986).

  D.  Supervisory Liability

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See* Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Under Iqbal, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*, 556 U.S. at 677. "[S]upervisors are liable under [section] 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). Facts sufficient to establish a causal connection include those "which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Keating, 598 F.3d at 762 (internal quotation omitted). The factual allegations of the complaint must plausibly show that the supervisory official acted with the same mental state required to establish a constitutional violation against his subordinate. *See* Franklin v. Curry, 738 F.3d 1246, 1249–51 & n.7 (11th Cir. 2013) (in analyzing plaintiff's claims against supervisory defendants, district court must first identify the precise constitutional violation charged and explain the elements of that particular violation, for example, deliberate indifference or other mens rea; second, the district court must weed out conclusory allegations and determine whether the facts alleged enable the court to draw the reasonable inference that the supervisor is liable for the alleged misconduct); Maxwell v. Cnty. of San Diego, 708 F.3d 1075, 1097 (9th Cir. 2013) ("To bring a § 1983 action against a supervisor, the plaintiff must show:  (1) the supervisor breached a legal duty to the plaintiff; (2) the breach of duty was 'the proximate cause' of the plaintiff's constitutional injury, and (3) the supervisor had at least the same level of mens rea in carrying out his superintendent responsibilities as would be required for a direct violation of the plaintiff's constitutional rights . . .") (citing Iqbal, 129 S. Ct. at 1949); Dodds v. Richardson, 614 F.3d 1185, 1204 (10th Cir. 2010) (after Iqbal, "[a] plaintiff may [ ] succeed in a § 1983 suit against

a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."); Whitson v. Stone Cnty. Jail, 602 F.3d 920, 928 (8th Cir. 2010) (after Iqbal, a supervisory defendant is liable only if he or she personally displayed the same mental state required to establish a constitutional violation by his or her subordinate). Filing a grievance with a supervisory person does not, alone, make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. *See* Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009); Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); *see also* Lomholt v. Holder, 287 F.3d 683, 683 (8th Cir. 2002) (defendants' denial of plaintiff's grievances did not state a substantive constitutional claim).

III. ANALYSIS

Plaintiff seeks to hold Defendant Doyle, the Head of Health Services, liable for injuries Plaintiff suffered as a result of the delay in issuance of his medical passes and being seen by a doctor. Plaintiff alleges the medical department knew of his back condition, because he filed several sick call requests, and the medical department issued medical passes on May 18, 2012. However, knowledge of Plaintiff's condition may not be imputed to Doyle simply because she was Head of Health Services. Plaintiff has not alleged facts suggesting Doyle actually knew of his serious medical need; nor has he alleged facts showing that Doyle personally participated in the delays in treatment, directed medical staff to delay, or knew that staff would delay and failed to stop them from doing so. Therefore, Plaintiff failed to state an Eighth Amendment claim against Defendant Doyle.

The same is true with regard to Plaintiff's claim against Defendant Warden Ellis. Plaintiff alleges Ellis failed to "fix the situation" even after a CCA official directed him to do so. However, this vague allegation, devoid of any further factual enhancement, is insufficient to support an inference that Warden Ellis actually knew that his subordinates' conduct posed a risk of serious harm, and that he disregarded that risk by conduct that was more than gross negligence.

Likewise, Plaintiff's allegations fail to state a plausible Eighth Amendment claim as to Defendants Durrance, Ruffin, and Sanders. Plaintiff alleges that after Sergeant Grinder confiscated

his medical passes, he filed a formal grievance with Durrance, the Unit Manager of his housing unit, but Durrance responded that he could not do anything, and urged Plaintiff to withdraw his grievance. Plaintiff alleges Sanders, the Chief of Security, advised Plaintiff to request re-issuance of the passes from the medical department. These facts do not suggest Durrance or Sanders actually knew that their failure to act on Plaintiff's complaints regarding Sergeant Grinder's conduct posed a risk of serious harm to Plaintiff's health, especially given the availability of a process through which Plaintiff could seek re-issuance of the passes.

Plaintiff's only factual allegation concerning Assistant Warden Ruffin is that he and Sanders found Plaintiff guilty of the disciplinary infraction of refusing to work (which was allegedly caused by the nurse's failure to inform security staff of Plaintiff's medical passes, and resulted in Lieutenant Russell's use of force) and sentenced him to thirty (30) days in confinement. This allegation is insufficient to hold either of them liable for either of the alleged Eighth Amendment violations (i.e., the alleged use of excessive force by Russell and the alleged deliberate indifference to Plaintiff's medical needs).[2]

Finally, Plaintiff has not identified a policy or custom of CCA that resulted in the alleged unconstitutional deprivation of medical care or the alleged use of force. Therefore, he has not stated

---

[2] Even if the court liberally construed Plaintiff's allegations as asserting a due process claim against Ruffin and Sanders, his allegations fail to state a plausible claim for relief. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." Sandin v. Conner, 515 U.S. 472, 485, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Absent an "atypical, significant deprivation" or some affect on the duration of sentence, there is no liberty interest implicated by placement in disciplinary confinement for a limited period of time. 515 U.S. at 486–87. Here, Plaintiff does not allege facts suggesting that the duration and conditions of his disciplinary confinement rose to the level of an atypical, significant deprivation. See Sandin, 515 U.S. at 484, 486 (plaintiff's disciplinary, segregated confinement for thirty (30) days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); Rodgers v. Singletary, 142 F.3d 1252 (11th Cir. 1998) (no liberty interest existed when plaintiff was kept in administrative confinement for two (2) months pending the resolution of criminal charges arising from an altercation with a corrections officer); see also Al-Amin v. Donald, 165 F. App'x 733 (11th Cir. 2006) (unpublished) (inmate's original placement in administrative segregation for six (6) months and reassignment six (6) months later for continued confinement in administrative segregation did not unexpectedly exceed his sentence in a manner that would evoke the protections the Due Process Clause). Further, even if the duration of Plaintiff's sentence was affected, he cannot recover monetary damages for the alleged due process violation, because he does not allege his disciplinary conviction caused a physical injury, which is a requirement imposed by 42 U.S.C. 1997e(e). Moreover, Plaintiff's release from incarceration after he commenced this civil rights action precludes an award of declaratory or injunctive relief. See Zatler v. Wainwright, 802 F.2d 397, 399 (11th Cir. 1986) (inmate's release from prison mooted claim for declaratory and injunctive relief).

a plausible Eighth Amendment claim against the entity which operated Graceville C.F. at the time of the alleged constitutional violations.

IV. CONCLUSION

Plaintiff's factual allegations fail to state a plausible claim for relief against Defendants CCA, Ellis, Ruffin, Sanders, Doyle, or Durrance. Therefore, his claims against those Defendants should be dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B). At this stage of the litigation, Plaintiff's allegations against Lieutenant Russell, Sergeant Grinder, Assistant Warden Gillis, and the "Unidentified Nurse" are sufficient to proceed with service of process as to those Defendants. Therefore, upon the district court's ruling on this Report and Recommendation, the matter should be referred to the undersigned for further proceedings on Plaintiff's Eighth Amendment claims against those Defendants.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's claims against Defendants CCA, Ellis, Durrance, Ruffin, Sanders, and Doyle be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

2. That this matter be referred to the undersigned for further proceedings on Plaintiff's Eighth Amendment claims against Defendants Russell, Gillis, Grinder, and "Unidentified Nurse."

At Pensacola, Florida this 29th day of March 2014.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**